IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OREGON-WASHINGTON CARPENTERS- )
EMPLOYERS PENSION TRUST FUND, )
                           )　No. CV 06-1379-HU
         Plaintiff,　)
                           )
                           )　OPINION AND ORDER
    v.　)
                            )
BODEN STORE FIXTURES, INC.,　)
                            )
        Defendant.　)
————————————————————————)

Bruce A. Rubin
Alyssa E. Tormala
Jennifer J. Roof
Miller Nash
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
     Attorneys for plaintiff

Richard N. VanCleave
Barran Liebman
601 S.W. Second Avenue, Suite 2300
Portland, Oregon 97204

1 - OPINION AND ORDER

Attorneys for defendant

HUBEL, Magistrate Judge:

This is an action brought by the Oregon-Washington Carpenters-Employers Pension Trust Fund (the Plan) to vacate an arbitration award pursuant to 29 U.S.C. § 1401(b)(2), impose withdrawal liability on the defendant in the amount of $98,569.40, award pre- and post-judgment interest on that amount, and award the Plan its attorney's fees and costs.

The issue presented is whether the arbitrator made an error of law in deciding that the defendant, Boden Store Fixtures, Inc. (Boden), had no withdrawal liability under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. §§ 1381-1453.

## Facts

The parties have stipulated to the following facts.

The Plan is a multiemployer pension plan governed by the MPPAA and ERISA, that covers employees in the building and construction industry. Boden is an employer engaged primarily in the manufacture and sale of secondary wood products, including custom store fixtures and other items such as checkstands, show cases, and displays. Some of the fixtures Boden manufactures and sells require installation.

For many years, Boden provided and installed fixtures for Fred Meyer, Inc., and maintained its own installation department,

2 - OPINION AND ORDER

separate from its manufacturing operations. Before August 11, 2003, Boden either performed installation work through its in-house employees or subcontracted installation to other companies. Boden also provided a warranty to most or all of its customers, under which Boden would repair defects in craftsmanship or materials ("warranty work.") Boden employees performing installation and warranty work were members of the United Brotherhood of Carpenters and Joiners of America (the UBOC).

The installation and warranty work that Boden's in-house installation employees performed was considered work in the "building and construction industry." Until August 11, 2003, Boden was subject to a Master Labor Agreement with the UBOC applicable to the in-house installation and warranty employees. For the installation and warranty employees, Boden was also subject to a short-form Carpenters Compliance Agreement with the Oregon State District Council of Carpenters and Southwest Washington District Council of Carpenters and a short-form UBOC Agreement. (These three agreements are referred to collectively as the UBOC agreements).

The UBOC agreements required Boden to contribute to the Plan for work described in those agreements that was performed by its employees.

Article 2.2 B of the Master Labor Agreement provides:

> Building construction work shall cover, but not be limited to, the construction of residential, commercial or industrial structures, and the on-site work necessary for assembly, erection and installation of facilities and

equipment in or on such structures, including any and all modifications, additions and repairs thereto.

Article 2.2 B of the Master Labor Agreement governs the installation and warranty work performed by Boden's in-house employees before August 11, 2003, for which Boden contributed to the Plan.

The UBOC agreements all contained subcontracting clauses that governed Boden's use of subcontractors. Those clauses required that if Boden used a subcontractor to perform installation and warranty work, Boden had to ensure that the subcontractor was a signatory to a UBOC Agreement or was otherwise bound to the requirements of the agreements. The three agreements made Boden responsible for any amounts, including pension payments, that were not paid by subcontractors.

In the spring of 2003, as a consequence of Fred Meyer's termination of its installation relationship with Boden, Boden decided to shut down its installation department. By June 2003, Boden had laid off all of its installation employees. Boden terminated the UBOC agreements and withdrew union recognition. As a result, as of August 11, 2003, Boden had no further obligation to contribute to the Plan.

Immediately after Boden ceased doing installation work and laid off its installers, Boo Company, a construction company set up in April 2003, purchased Boden's installation equipment and employed many of its installation employees. After August 11, Boden

4 - OPINION AND ORDER

subcontracted its installation and warranty work to Boo Company, along with other entities. Boden did not arrange for Boo Company or its other installation subcontractors to make Plan contributions on behalf of their installation employees. In 2004 and 2005, on fixture sales of more than $8 million, Boden contracted only slightly in excess of $105,000 in installation services, less than 1.5% of the total value of the fixture sales.

Boden and Boo Company have neither common management, nor common control of labor or other relations, but Boden provided financial assistance to Boo Co. in 2003 and 2004, including a $700,000 CD that Boo Company used as security for a line of credit and a $300,000 loan, now repaid.

On March 14, 2005, the Plan demanded payment from Boden of $98,569.40 in withdrawal liability because it determined that Boden had performed work for which contributions were required. Boden does not dispute the amount of withdrawal liability, but did dispute whether, through its subcontractors, Boden continued to perform work within the jurisdiction of the UBOC agreements that had previously covered its installation employees, which would impose this liability. The parties proceeded to arbitration as required by the MPPAA, 29 U.S.C. § 1401(a). An arbitration hearing was held on June 27 and 28 before Arbitrator Thomas Levak.

///

///

5 - OPINION AND ORDER

**Standards**

The court's jurisdiction over this action is under 29 U.S.C. §§ 1401(b)(2) and 1451, which provide that any party to arbitration proceedings may bring a civil action in an appropriate United States district court to enforce, vacate, or modify the arbitrator's award.

The parties stipulated to this issue for arbitration:

Whether Boden continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or resumes such work within 5 years after the date on which the obligation to contribute under the plan ceased, and does not renew the obligation at the time of the resumption under 29 U.S.C. § 1383(2)(B).

This issue is framed by the MPPAA, 29 U.S.C. §§ 1381-1453. The MPPAA imposes withdrawal liability on employers that completely or partially withdraw from a multiemployer pension plan and stop making contributions to that plan. Under most circumstances, withdrawal liability occurs when an employer permanently ceases to have an obligation to contribute under a covered plan, 29 U.S.C. § 1383(a), as was the case when Boden laid off its installation employees and withdrew union recognition.[1]

The MPPAA requires that employers withdrawing from multiemployer pension plans pay the unfunded vested benefits

---

[1] There is no dispute that on or about August 11, 2003, Boden ceased to have an obligation to contribute to the Plan as a result of its laying off the installation employees and withdrawing union recognition.

attributable to the withdrawing employers' participation. <u>Connolly v. Pension Benefit Guaranty Corp.</u>, 475 U.S. 211, 217 (1986). The purpose of such withdrawal liability is to ensure that an employer withdrawing from a plan provides adequate funds to pay the employer's fair share of unfunded liabilities that would otherwise fall on the remaining contributing employers. <u>H.D. Elliott, Inc. v. Carpenters Pension Trust Fund</u>, 859 F.2d 808, 811-12 (9th Cir. 1988). In general, the amount of an employer's withdrawal liability is the employer's share of unfunded vested benefits. 29 U.S.C. § 1391.

Boden contributed to the Plan only for its in-house employees doing installation and warranty work, which was considered "building and construction industry" work. The MPPAA contains a special exception for employers that contribute to pension plans for workers performing building and construction industry work. 29 U.S.C. § 1383(b)(1). The building and construction industry exception provides:

> (1) Notwithstanding subsection (a) of this section, in the case of an employer that has an obligation to contribute under a plan for work performed in the building and construction industry, a complete withdrawal occurs only as described in paragraph (2) if--
>> (A) substantially all the employees with respect to whom the employer has an obligation to contribute under the plan perform work in the building and construction industry, and
>> (B) the plan--
>>> (i) primarily covers employees in the building and construction industry, or
>>> (ii) is amended to provide that this subsection applies to employers described in this paragraph.

     (2) A withdrawal occurs under this paragraph if--
        (A) an employer ceases to have an obligation
        to contribute under the plan, and
        (B) the employer--
            (i) continues to perform work in the
            jurisdiction of the collective bargaining
            agreement of the type for which
            contributions were previously required,
            or
            (ii) resumes such work within 5 years
            after the date on which the obligation to
            contribute under the plan ceases, and
            does not renew the obligation at the time
            of the resumption.

If an employer is covered by the building and construction employees exception as defined above in § 1383(b)(1) above, as Boden is for its in-house installation and warranty employees, the analysis moves to 29 U.S.C. § 1383(b)(2). Under these provisions, employers who have ceased making contributions to pension plans on behalf of building and construction industry employees are subject to withdrawal liability only if they continue to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or if they resume such work within five years after the date on which the obligation to contribute ceased. See also <u>Elliott</u>, 859 F.2d at 811 (under building and construction industry exception, withdrawal liability is imposed only when a contractor's obligation to the fund ceased, but the contractor continued doing covered work).

The rationale for excepting employers of building and construction industry employees from withdrawal liability unless they continue to do covered work is explained in <u>Elliott</u>:

8 - OPINION AND ORDER

For the construction industry ... Congress enacted a ...
provision imposing withdrawal liability only when a
contractor's obligation to the fund ceased and the
contractor continued doing covered work. This provision
was enacted because the construction industry as a whole
does not necessarily shrink when a contributing
contractor leaves the industry; employees are often
dispatched to another contributing contractor.
* * *
The withdrawal of a signatory employer from a plan does
not reduce the contribution base if the employer leaves
the construction industry and other signatory employers
take up the slack.

The withdrawal of any employer from the plan does
decrease the base, however, if the employer stays in the
industry but goes non-union and ceases making payments to
the plan. To take this into account, the MPPAA makes
withdrawal liability depend on whether the employer is
continuing to do covered work.

859 F.2d at 811-12.

The key authority for the issue in this case is <u>Elliott</u>.

In <u>Elliott</u>, plaintiff, a housing contractor, sought a
declaration that it had no liability to the Carpenters Pension
Trust Fund under the withdrawal liability provisions of the MPPAA.
Elliot was a signatory to the Carpenters Master Agreement, under
which it was required to contribute to a trust fund on behalf of
its workers, until June 1983.  In December 1983, negotiations for
a new agreement reached impasse. Beginning in November 1982,
Elliott had begun subcontracting its carpentry work and had ceased
making contributions to the Carpenters trust fund. Although Elliott
continued as a housing contractor, the carpentry work on its
projects was done by subcontractors rather than its own employees.
859 F.2d at 810.

9 - OPINION AND ORDER

The subcontracting provisions of the collective bargaining agreement Elliott had signed required employers to subcontract only to contractors willing to comply with the provisions of the agreement. The agreement further required that when a subcontractor was delinquent in making payments to the trust fund, the signatory employer was required to make those payments. Id.

The district court held that Elliott, by subcontracting its carpentry work, nevertheless continued to "perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required," 859 F.2d at 812. Consequently, Elliott did not qualify for the building and construction industry exception to withdrawal liability.

The district court also observed that at least some of the subcontractor's employees were not covered by the plan, so that the contribution base for the plan had in fact been reduced. The district court observed, "Where an employer replaces its own employees, covered by the pension plan, with employees of a subcontractor, at least some of whom are not covered by the pension plan, the employer 'reduces the plan's contribution base.'" The court held that because Elliott continued to perform work for which contributions were previously required, it was subject to withdrawal liability. Id.

On appeal, Elliott argued for the first time that the statutory language required it to be an "employer" after it

withdrew from the plan, and that it was no longer an "employer" because it was subcontracting its carpentry work. Id. The court disposed of this latter argument by holding that the statute contained no requirement that the withdrawing party remain a direct employer.

> The statute uses the word "employer" only to identify the entity to whom the withdrawal liability provision applies if the entity continues to do work covered by the collective bargaining agreement. ... The word "employer" describes one who was a signatory employer with respect to the plan. This Elliott clearly was.

Id. at 813.

The court then considered whether, after its obligation to contribute under the plan ceased, Elliott continued to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required. The court held that under the terms of the collective bargaining agreement, Elliott was obliged to contribute on behalf of its own carpenters, hire union subcontractors making their own contributions to the fund, or to make up any subcontractor delinquencies, saying, "We are in full agreement with the district court when it concluded that regardless of whether the carpentry tools were wielded by Elliott's employees or a subcontractor's employees, Elliott continued to do work of the type for which contributions were previously required." Id.

### Arbitration Proceedings

Boden's position in the arbitration was that it was not

11 - OPINION AND ORDER

subject to withdrawal liability because after it laid off its installation and warranty employees and withdrew union recognition, it was no longer an employer in the building and construction industry. See Arbitrator's Decision, Complaint, Exhibit 1 at 6.

The MPPAA, 29 U.S.C. § 1383(b), does not define who is an employer in the building and construction industry, but Boden argued that the arbitrator was required to look to § 8 of the Labor Management Relations Act, and to interpret § 1383(b) by reading the term "employer" to mean "employer primarily engaged in the building and construction industry." Id. Boden argued that this reading of the statute was consistent with the holding in Elliott, authority also cited by the Plan, which imposed withdrawal liability where a construction industry employer stayed in the construction industry, but went non-union and ceased making payments to the plan. Boden asserted that because, after June 2003, the value of the installation services that Boden contracted at its customers' request was a negligible fraction of the revenues derived from the manufacture and sale of its products, Boden could no longer be held to be an employer in the building and construction industry. Id.

Boden argued further that under § 1383(b)(2)(B)(I), an employer in the building and construction industry is subject to withdrawal liability if it "continues to perform work of the type for which contributions were previously required, so to the extent that Boden occasionally performs installation and/or warranty work

12 - OPINION AND ORDER

with its production employees, such work does not subject Boden to withdrawal liability because contributions were never previously required for that work." Id. at 7.

Boden also argued that it could not lawfully renew the obligation to make plan contributions because it was not "an employer primarily engaged in the construction industry." Id. Thus, Boden asserted, even if the arbitrator were to find that Boden had resumed work in the building and construction industry, it could not have lawfully entered into an agreement requiring it to make contributions because it was not an employer primarily engaged in the building and construction industry.

The Plan countered that Boden's argument that it could not be required to pay withdrawal liability because it was not an employer primarily engaged in the building and construction industry after it withdrew from its collective bargaining agreement with the UBOC was "inconsistent with and irrelevant to" the parties' stipulated issue, and was incorrect as a matter of law, because neither the statute nor applicable case law required that Boden continue to be a building and construction employer after withdrawal. Id. Rather, the Plan argued, the "plain language of § 1383(b)(1) focuses on the work performed by the employees for whom the employer must contribute to a particular plan," and the nature of the work performed by the rest of the employer's workers, or the general business in which the employer was engaged, is irrelevant. Id.

13 - OPINION AND ORDER

The Plan contended that § 1383(b) is "very different from § 8(f) of the NLRA," because § 8(f) specifically refers to employers engaged primarily in the building and construction industry, and governs the use of pre-hire agreements with such employers. The Plan argued that nothing in § 1383(b)(2)(I) expressly or implicitly requires that an employer be engaged primarily in the building and construction industry to be liable for withdrawal liability—indeed, that section does not even mention the building and construction industry. Rather, the Plan argued, the focus of that provision, as the court held in <u>Elliott</u>, is whether an employer continues to perform any amount of work for which it previously was required to contribute under its collective bargaining agreement.

The Plan asserted that Boden continued to perform work or resumed work under § 1383(b)(2)(B)(I) and (ii), thereby triggering withdrawal liability, based on Boden's exhibits showing that from 2003 through 2005, it subcontracted at least $100,000 of work to Boo Company and other companies. The Plan also pointed to testimony at the hearing that the installation and warranty work subcontracted to Boo Company was the same type of work that previously had been performed by Boden's in-house carpenters, and for which contributions previously were made under the Plan. The Plan contended that the fact the work was subcontracted rather than performed directly was a "distinction without a difference."

The arbitrator issued his decision on August 29, 2006. He

14 - OPINION AND ORDER

agreed with all of Boden's arguments, finding that "continuation in the building and construction industry is a necessary condition to the imposition of withdrawal liability under § 1383(b)." Id. at 9. Nevertheless, the arbitrator concluded that "[a]s an employer primarily engaged in the manufacturing business, not the construction business, [Boden] was not subject to withdrawal liability."

The arbitrator agreed with Boden that for purposes of interpreting § 1383(b), the term "employer" must be defined by reference to the LMRA's § 8 to mean "employer primarily engaged in the building and construction industry." The arbitrator reasoned that because, after June 2003, the value of the installation services that Boden contracted at its customers' request was a "negligible fraction" of its revenues, Boden had not continued in the building and construction industry and therefore was not subject to withdrawal liability. The arbitrator noted that Boden "no longer remained in [the building and construction] industry after 2003 and never returned to that industry at any time after that date." The arbitrator therefore concluded that, unlike the employer in Elliott, Boden did not stay in the industry and go non-union, thereby reducing the contribution base.

The arbitrator agreed with Boden that its occasional use of production employees to perform installation or warranty work did not subject it to withdrawal liability because "that liability

exists only where an employer continues to perform work of the type for which contributions were previously required, and in this case, contributions were never required for that work prior to June 2003." <u>Id.</u>

For the installation work that Boden subcontracted to Boo Company and others after August 11, 2003, the arbitrator also found no withdrawal liability, despite the stipulated facts that many of Boden's former in-house installation employees went to work for Boo Company after Boden laid them off, and that the Master Labor Agreement, the short-form Carpenters Compliance Agreement, and the short-form UBOC Agreement all imposed on Boden the responsibility for ensuring payments to the Plan were made by subcontractors performing work for Boden.

**Discussion**

1. <u>Did the arbitrator err in finding that "continuation in the building and construction industry is a necessary condition to the imposition of withdrawal liability under § 1383(b)?"</u>

The arbitrator's finding that Boden's withdrawal liability was conditioned on its "continuation" in the building and construction industry is puzzling from both a factual and a legal standpoint. There is no indication in the stipulated facts before the arbitrator that Boden ever *was* "primarily engaged in the building and construction industry." The stipulated facts state that Boden "primarily manufactures and sells secondary wood products..." Complaint, Exhibit 1 at 2. It follows that only a subset of Boden's

16 - OPINION AND ORDER

employees, those doing in-house installation and warranty work, were in the building and construction industry: "[T]the installation and warranty work that Boden's in-house installation employees performed was in the building and construction industry." Id.

The arbitrator's conclusion that Boden's "continuation" in the building and construction industry is a necessary precondition for withdrawal liability is also inconsistent with the statutory language of the MPAA and Congressional intent as explained by the court in Elliott.

Nowhere in the MPAA is withdrawal liability conditioned on an employer's being "primarily" engaged in the building and construction industry or on the employer's "continuation in the building and construction industry." Section 1383(b) is addressed to an "employer that has an obligation to contribute under a plan for work performed in the building and construction industry." The stipulated facts in this case make it clear that Boden was an employer that had an obligation to contribute under a plan for work performed in the building and construction industry--that is, the work performed by Boden's installation employees. There is nothing in the stipulated facts to suggest that Boden had an obligation to contribute under the Plan for all or substantially all of its employees, such as those engaged in manufacturing, sales, or clerical work--only that Boden made contributions on behalf of its

17 - OPINION AND ORDER

warranty and installation employees who were members of the UBOE.

The "building and construction industry" provisions of the MPPAA provide an exception to withdrawal liability *unless* the employer "continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required," or "resumes such work within 5 years after the date on which the obligation to contribute under the plan ceases, and does not renew the obligation at the time of the resumption." 29 U.S.C. § 1383(b)(2). According to the legislative history of the MPPAA:

> An employer contributing to a plan is subject to these special rules[2] only if substantially all of the employees *for whom the employer has an obligation to contribute* perform work in the building and construction industry.

H.R. Rep. 960869(i), 1980 U.S.C.A.A.N. 2918, 2943-44. (Emphasis added). It is the *employees* for whom the employer *has an obligation to contribute* who must substantially all perform work in the building and construction industry. It is immaterial whether the employer is "primarily" engaged in the building and construction industry; it is immaterial whether substantially all of the employer's employees perform work in the building and construction industry. The statute simply says that the building and construction industry provision applies if substantially all of the employees *for whom the employer has an obligation to contribute*

---

[2] Referring to 29 U.S.C. § 1383(b).

perform work in the building and construction industry.

2. <u>Did the arbitrator err in concluding that Boden had no
   withdrawal liability because the warranty and
   installation employees on whose behalf Boden had made
   contributions to the Plan did not continue to work under
   the jurisdiction of the collective bargaining agreement
   for which contributions were previously required?</u>

The question of whether Boden installation employees continued to perform work under the jurisdiction of the collective bargaining agreement turns on whether the employees hired by Boo Company and other subcontractors to do Boden installation work are deemed to be doing work under the jurisdiction of the collective bargaining agreement. The Plan argues that the installation work Boden now subcontracts for is, for purposes of the statute, no different from work previously performed directly by Boden's in-house installation employees. Contributions for these employees were previously required of Boden, but were not made by the subcontractors.

I agree. The facts in this case are not significantly different from those in <u>Elliott</u>, and the holding of <u>Elliott</u> applies. An employer that has made contributions on behalf of employees in the building and construction industry, who ceases making those contributions, but continues performing the same work through subcontractors who do not make contributions, is subject to withdrawal liability. As the court said in <u>Elliott</u>, "[R]egardless of whether the carpentry tools were wielded by Elliott's employees or a subcontractor's employees, Elliott continued to do work of the

type for which contributions were previously required."

The situation presented by this case is precisely the situation explained by the court in <u>Elliott</u>: Boden's withdrawal from the Plan has decreased the Plan's base, because Boden continues to do installation work for which it previously contributed to the Plan, but now the installation employees work for a subcontractor who does not make payments to the Plan. Because another signatory employer has not "taken up the slack" created by Boden's withdrawal from the Plan, Boden has reduced the contribution base, and is therefore subject to withdrawal liability for the unfunded vested benefits. Thus, Boden is subject to withdrawal liability because it continued to perform work of the type for which contributions were previously required.

3.  <u>Did the arbitrator err in concluding that Boden could only have avoided withdrawal liability by going out of the manufacturing business</u>?

The arbitrator agreed with Boden that because Boden merely manufactured and sold fixtures to customers who required that Boden be responsible for installation, Boden did not "solicit or actively pursue any installation work." The arbitrator observed, "Boden could only have avoided withdrawal liability by going out of the manufacturing business. That position is patently strained and unreasonable."

The arbitrator's observation is not grounded in the MPPAA or in <u>Elliott</u>. It is immaterial whether Boden solicits or actively

20 - OPINION AND ORDER

pursues installation work, or merely does installation work at the request of its customers. The statute provides for withdrawal liability if Boden continues to engage in installation work, for whatever reason, and <u>Elliott</u> makes it clear that Boden cannot evade withdrawal liability by subcontracting its installation work to non-contributing subcontractors. Boden's termination of the UBOC agreements and withdrawal of union recognition meant that vested benefits for its installation employees were left unfunded. The MPPAA solves that problem by imposing withdrawal liability on the contributing employer. Boden could have avoided withdrawal liability by subcontracting to a union employer who would make contributions to the Plan, thereby taking up the slack created by Boden. Because Boden did not subcontract to a union employer, the problem of unfunded vested benefits belongs to Boden, and Boden is liable. Whether Boden remains in the manufacturing business or not is immaterial.

> 4.    <u>Did the arbitrator err in concluding that Boden has no withdrawal liability for its own production employees which it now uses for part of its in-house installation work?</u>

The arbitrator found that, to the extent Boden "occasionally performs installation and/or warranty work with its production employees," it was not subject to withdrawal liability. The arbitrator reasoned that § 1383(b)(2)(B)(i) provides for liability only where an employer continues to perform work of the type for which contributions were previously required, and "in this case,

contributions were never required for that work prior to June 2003." I find no error in the arbitrator's conclusion that Boden was not subject to withdrawal liability for in-house installation services that were consistently performed by Boden's production employees, rather than its installation employees. The record seems clear that while Boden production employees occasionally did installation work, and continue to do occasional installation work, they were never covered by the UBOC agreements, and were not required to have Plan contributions made on their behalf. Under the withdrawal liability requirements, these employees never did work "of the type for which contributions were previously required," and there are no unfunded, vested benefits for these employees. Thus Boden owes no withdrawal liability for them.

## Conclusion

The arbitrator's conclusion that Boden's withdrawal liability was conditioned on Boden's "continuation" in the building and construction industry was erroneous as a matter of both fact and law. For its installation and warranty employees, Boden was an employer who had an obligation to contribute under a plan for work performed in the building and construction industry. Despite the fact that Boden laid off its installation employees and outsourced its installation work to non-union subcontractors, Boden continued to perform installation work--i.e., work in the jurisdiction of the UBOC agreements, for which Boden was previously required to make

contributions. Under the terms of the MPPAA, Boden therefore is liable for withdrawal liability. Elliott establishes that it is immaterial to withdrawal liability whether Boden continued to do installation work directly or through subcontractors.

The Boden production employees who formerly did occasional installation work, and who continue to do so, were never covered by the UBOC agreements. Because Boden did not make contributions to the Plan for these employees, they never did work "of the type for which contributions were previously required," and Boden owes no withdrawal liability for them.

The arbitrator's decision is vacated. Defendant is liable for withdrawal liability in the amount of $98,569.40.

IT IS SO ORDERED.

Dated this 24th day of April, 2007.


/s/ Dennis James Hubel
Dennis James Hubel
United States Magistrate Judge

23 - OPINION AND ORDER